UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY P.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL,<br><br>　　　　Defendant. | Case No. 19-cv-03976-EMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 18, 21 |

## I.   INTRODUCTION

Timothy P. ("Mr. P") seeks to reverse the 2018 decision ("2018 ALJ Decision") by Administrative Law Judge Patrick Hannon ("ALJ Hannon") that denied Mr. P disability insurance benefits under Title II of the Social Security Act. Mr. P alleged disability beginning May 20, 2012 (the alleged onset date) through June 30, 2012 (Mr. P's last date insured).[1] Applying res judicata from a prior unfavorable ALJ decision ("2012 ALJ decision"), ALJ Hannon found that Mr. P did not overcome the presumption of continuing nondisability, which arises in disability proceedings that follow a previous ALJ's finding of nondisability. Therefore, ALJ Hannon denied Mr. P disability insurance benefits.

In this Court, Mr. P moves for summary judgment, asserting ALJ Hannon erred by improperly applying res judicata and in rejecting his treating doctor's opinion. The Commissioner has cross-moved for summary judgment, seeking to uphold ALJ Hannon's decision. For the reasons discussed below, the Court **GRANTS in PART** Mr. P's Motion for Summary Judgment,

---

[1] May 20, 2012 to June 30, 2012, will be referred to as the "relevant period."

**DENIES in PART** the Commissioner's Cross-Motion for Summary Judgment, and **REMANDS** for further proceedings.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A.   Mr. P's Alleged Disabilities

At the time of his 2016 disability application (which led to the 2018 ALJ decision), Mr. P was a 50-year-old man who had not worked since 2008; he alleged both mental and physical impairments. Mr. P did not attend high school, and the only job Mr. P has ever held was as a dismantler for his uncle's autobody wrecking yard. *See* Administrative Record ("AR") at 35, Docket No. 13. Mr. P testified that he worked for his uncle for 23 years. *See* AR 36. However, he often missed worked due to his impairments and would only show up for two to three weeks out of every month. *See* AR 35. During the 23-year span working for his uncle, there were some years when Mr. P would not work at all due to his impairments. *See* AR 39. In regard to his living situation, Mr. P has lived with his parents for the majority of his life. *See* AR 30, 44. He did live in a duplex, owned by his parents, at one point with a girlfriend near his parents' home. *See* AR 44. He testified to spending most of his days at home watching TV. *See* AR 39. If he leaves the house, he usually drives to the 7-11 around the corner from his parents' house. *See* AR 43. Mr. P asserts that his inability to hold a job is caused by his various impairments, such as rheumatoid arthritis, agoraphobia,[2] and borderline intellectual functioning.[3]

B.   The 2012 ALJ Decision

Mr. P first applied for Title II disability benefits on May 28, 2010, alleging an onset date of September 4, 2008. *See* AR 263. Mr. P claimed disability from agoraphobia, bilateral carpal tunnel syndrome, depression, and impairment of cervical discs 5, 6, and 7. *See* AR 267. The Commissioner denied Mr. P's application and subsequently denied it again upon reconsideration.

---

[2] Agoraphobia is a type of anxiety disorder that causes an individual to avoid places and situations that might cause them to feel trapped, helpless, panicked, embarrassed, or scared. Rose Kivi et al., *Agoraphobia*, HEALTHLINE (Aug. 16, 2018), https://www.healthline.com/health/agoraphobia.

[3] Symptoms of Borderline Intellectual Functioning include, "underlying abnormalities in cognitive processing . . . deficits in attention or impulse control . . . difficulty with organizing . . . and deficits in social skills." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

*See* AR 263. Mr. P then sought review by an ALJ, and a hearing was held on February 23, 2012. *See* AR 24–57. On May 18, 2012, ALJ Barbeito denied Mr. P's claim and found that he was not disabled from September 4, 2008, through the date of the decision, May 18, 2012.[4] *See* AR 272.

In her analysis, ALJ Barbeito applied the five-step disability test set forth in 20 C.F.R. § 404.1520(a)(4)(i–v). *See* AR 260–72. The five steps of inquiry are:

> 1. Is the claimant presently working in a substantially gainful activity? *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of the listed specific impairments described in 20 C.F.R. Part 220, Appendix 1? *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

"The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five." *Id.* at 953–54. At steps one and two, ALJ Barbeito found that Mr. P did not engage in substantial gainful activity and had the following severe impairments: bilateral carpal tunnel syndrome, cervical degenerative disc disease, and panic disorder with agoraphobia.[5] *See* AR 265. At step three, ALJ Barbeito found that Mr. P did not have the severity of symptoms required to meet or equal a medical listing.[6] *See id.* ALJ Barbeito determined that

---

[4] In his Motion for Summary Judgment and Reply, Mr. P's counsel continually referred to ALJ Barbeito's decision as occurring on May 12, 2012. *See* Pl. Mot. at 2, 4–5, 7, 9; Pl. Reply at 2–3. However, according to numerous documents in the AR (and consistent with Defense counsel's Cross-Motion for Summary Judgment), ALJ Barbeito's decision was issued on May 18, 2012. *See* Def. Mot. at 1, 4–5, 9; AR 61, 75–76, 82–84, 181, 255, 272.

[5] Although the ALJ found panic disorder with agoraphobia to be a severe mental impairment, she did not find Mr. P's depression to be severe. *See* AR 269. In her decision, the ALJ implied that Mr. P's depression had improved since the filing of his disability application. *See id.*

[6] If a claimant meets or equals a listed impairment in Appendix 1 of the Social Security regulations, a claimant is considered per se disabled and consideration of the claimants age, education, and work experience is not needed. *See* 20 C.F.R. § 404.1520.

3

Mr. P had the following residual functional capacity: "the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; he could stand and/or walk for two hours out of an eight-hour workday; he could sit for eight-hours out of an eight-hour workday; he has swollen hands; and medication effectively treats his mental health issue." *See* AR 266. At step four, ALJ Barbeito found that Mr. P was unable to perform his past relevant work as an automobile wrecker. *See* AR 271. And finally, at step five, the ALJ found that there existed, in significant numbers, jobs that Mr. P could perform. *See* AR 271. As noted above, ALJ Barbeito issued her decision denying Mr. P's claim on May 18, 2012. *See* AR 61.

Importantly, Mr. P *did not* appeal the 2012 ALJ decision; thus, it became binding. *See* 20 C.F.R. § 404.955 (stating that the decision of an ALJ is binding unless it is appealed to the Appeals Council and if denied by the appeals council to a federal district court).

C.   The 2018 ALJ Decision

On November 15, 2016, Mr. P applied again for disability insurance benefits, alleging onset of disability on May 20, 2012 (two days after the 2012 ALJ decision) through June 30, 2012 (Mr. P's last date insured). *See Smith v. Berryhill*, 763 F. App'x 623, 625 (9th Cir. 2019) ("The claimant must . . . prove that he had such an impairment *before* the expiration of his disability insurance coverage."); AR 172–90. On the 2016 disability application, Mr. P claimed he suffered from rheumatoid arthritis, emphysema, high blood pressure, and cholesterol. *See* AR 173. Unlike his first disability application, Mr. P did not allege disability from agoraphobia, bilateral carpal tunnel syndrome, depression, or impairment of cervical discs 5, 6, and 7. *See* AR 265.

The Commissioner denied Mr. P's application on December 21, 2016, and again upon reconsideration on January 17, 2017. *See* AR 73–88. Mr. P subsequently requested a hearing before an ALJ. *See* AR 104–19. A hearing was held before ALJ Hannon on July 30, 2018. *See* AR 58–72. On August 10, 2018, ALJ Hannon issued his decision, concluding that Mr. P did not overcome the presumption of continuing nondisability arising from the 2012 ALJ decision. *See* AR 14–23. Mr. P appealed ALJ Hannon's decision to the Appeals Council for the Social Security Administration. *See* AR 157–61. On May 6, 2019, the Appeals Council held that there was no basis for changing ALJ Hannon's decision; therefore, it denied the request for review. *See* AR 3–

8. Mr. P then initiated the immediate action on July 10, 2019. *See* Docket No. 1.

Mr. P has exhausted his administrative remedies with respect to his claims for disability insurance benefits. This Court has jurisdiction to review pursuant to 42 U.S.C. § 405(g). As noted above, Mr. P has moved for summary judgment, seeking a reversal of the Commissioner's final decision and payment of benefits or, in the alternative, a remand for further proceedings. *See* Pl. Mot. at 1. The Commissioner has cross-moved for summary judgment, arguing for an affirmation of his final decision. *See* Def. Mot. at 1.

### III. DISCUSSION

#### A. Legal Standard

After a final decision on a claim for benefits by the Commissioner, the claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In appeals involving denial of social security benefits, the court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

#### B. Analysis

Mr. P presents two arguments challenging the 2018 ALJ decision. *See* Pl. Mot. at 2. First, Mr. P argues that ALJ Hannon erred when he applied res judicata from the 2012 ALJ decision because Mr. P showed a "changed circumstance," rebutting the presumption of continuing nondisability. *See* Pl. Mot. at 8. Second, Mr. P argues that ALJ Hannon improperly

rejected the 2018 medical opinion of Dr. Alexander Doan, Mr. P's treating doctor, because ALJ Hannon did not set forth clear and convincing reasons for doing so. *See* Pl. Mot. at 10–11.

### 1. Application of Res Judicata

The principle of res judicata applies to administrative decisions, although with less rigid standards than it does to judicial proceedings. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); Acquiescence Ruling 97-4(9).[7] "A final decision by an ALJ that a claimant is not disabled gives rise to the presumption that a claimant continues to be not disabled after the period adjudicated. . . ." Acquiescence Ruling 97-4(9). The presumption of continuing nondisability applies when adjudicating a subsequent disability claim. *See id.* "A claimant may rebut the presumption of nondisability by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period . . . ." *Id.* A changed circumstance includes an increase in the severity of the claimant's impairment or the alleged existence of an impairment not previously considered. *See id.* "[W]here the claimant rebuts the presumption by proving a 'changed circumstance,' principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim be given some res judicata consideration in determining whether the claimant is disabled. . . ." *Id.* If the prior ALJ decision includes "findings of the claimant's residual functional capacity, education, and work experience, [the current ALJ] may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity, education, or work experience." *Id.*

Here, Mr. P asserts he established a changed circumstance on two fronts. First, he argues

---

[7] Acquiescence Rulings explain how the SSA will apply decisions of the United States Courts of Appeals that are at odds with SSA's policies for adjudicating administrative claims. *Social Security and Acquiescence Rulings*, Social Security, https://www.ssa.gov/OP_Home/rulings/rulings-pref.html. For example, before *Chavez* it was SSA policy that a prior final decision that a claimant is not disabled *did not* give rise to any continuing presumption of nondisability. *See* Acquiescence Ruling 97-4(9). After the Ninth Circuit held in *Chavez* that a prior final decision that a claimant is not disabled *did* give rise to presumption of continuing nondisability, SSA adopted Acquiescence Ruling 97-4(9) to reflect that change. *See* Acquiescence Ruling 97-4(9). However, Acquiescence Rulings only apply to cases involving similar issues and that are within the jurisdiction of the Court of Appeals decision. *See Social Security and Acquiescence Rulings*, *supra*.

6

ALJ Hannon should have considered and addressed Dr. Jeremy Blank's March 20, 2018 diagnosis of borderline intellectual functioning ("BIF").[8]  *See* Pl. Mot. at 8.  Next, he argues ALJ Hannon erred by not addressing the alleged worsening of Mr. P's rheumatoid arthritis ("RA") during the period relevant to his second application for benefits.[9]  *See* Pl. Mot. at 9.  Based on the new impairment, BIF, or the worsening of one of his existing impairments, RA, Mr. P contends he rebutted the presumption of continuing nondisability and that ALJ Hannon erred when he found otherwise.  *See id.*

          a.      <u>Borderline Intellectual Functioning</u>

Regarding the assertion of a new impairment, Mr. P asserts that BIF is a lifelong condition and—in light of his March 20, 2018 diagnosis—that it must have been affecting him between May 20, 2012, and June 30, 2012, the period relevant to his second application. *See id.*;  20 C.F.R. § Pt. 404, Subpt. P, App. 1 (stating that BIF is a neurodevelopment disorder that commonly onsets

---

[8] Although Mr. P did not allege BIF in his 2016 disability application, his attorney did allege the impairment in a letter to ALJ Hannon before Mr. P's 2018 hearing and at the 2018 hearing before ALJ Hannon.  *See* AR 67, 256.  Per Social Security regulations, "The [ALJ] or any party may raise a new issue; an issue may be raised even though it arose after the request for a hearing and even though it has not been considered in an initial or reconsidered determination."  20 C.F.R. § 404.946.

[9] There is some inconsistency as to whether Mr. P's RA is a new condition or one that was already considered by the first ALJ.  In Mr. P's brief, he stated, "there are impairments not previously considered, including borderline intellectual functioning and rheumatoid arthritis." Pl. Mot. at 8.  Immediately after this sentence, he stated, "There is also new and material evidence showing an increase in the severity of [Mr. P's] existing impairments," but Mr. P did not say what those impairments were.  *Id.*  However, later on in his brief, Mr. P stated that ALJ Hannon failed to address "the worsening of [Mr. P's] arthritis during the period at issue," and that the evidence Mr. P provided "suggest[ed] a worsening of [Mr. P's] [rheumatoid arthritis]." Pl. Mot. at 9.  Furthermore, in his reply brief, Mr. P stated, "The ALJ did not address the above evidence, including both the increase in severity of [Mr. P's] rheumatoid arthritis and the newly diagnosed impairment of borderline intellectual functioning."  Defense counsel, in their opposition brief, did not treat Mr. P's arthritis as a new condition.  *See* Def. Mot. at 5 ("Plaintiff's bald assertion that his [rheumatoid arthritis] "worsened" during the period at issue . . . finds no concrete support in the record, and ALJ reasonably concluded there was no evidence of a worsening condition or changed circumstances.").  Moreover, the first ALJ addressed Mr. P's rheumatoid arthritis in her decision.  *See* AR 268 (in reference to an x-ray of Mr. P's left knee, the ALJ stated, "the claimant was diagnosed with rheumatoid arthritis, in remission."); AR 269 ("[Mr. P] alleged much stiffness in the joints in the morning in his hands; yet there was no evidence of any significant arthritic disease on examination.").  Thus, despite Mr. P's brief mention of RA as a new condition, all other evidence indicates Mr. P's RA is not a new condition but rather one that was previously considered.  Therefore, in order to show a "changed circumstance," Mr. P must show his RA worsened.  *See* Acquiescence Ruling 97-4(9).

during childhood or adolescence, although sometimes it is not diagnosed until adulthood). Mr. P supports his assertion with Dr. Blank's 2018 diagnosis and with school records from his childhood. *See* AR 450–56, 459–72; Pl. Mot. at 9. Dr. Blank administered a "complete psychological evaluation" and found that Mr. P scored a 23 out of 30 on the mini-mental state examination (MMSE), which is in the impaired range. *See* AR 450–54. Additionally, Mr. P scored in the impaired range on tests of intelligence, memory, and rapid mental processing/set shifting.[10] *See id.* Lastly, Dr. Blank found Mr. P has a full-scale IQ of 55, which is considered "extremely low."[11] *Id.* Mr. P's school records indicate he was enrolled in an individualized education program (IEP) for special education, but it is unclear for how long. *See* AR 174 (indicating Mr. P attended special education classes solely between 1971 and 1976); AR 463–68 (indicating Mr. P was in special education classes solely between 1981 and 1982). The record is also unclear regarding the highest grade-level achieved by Mr. P, but it appears he attained between a 6th and 8th grade education. *See* AR 174 (Disability Report) (indicating highest grade completed was 6th grade); AR 451 (Dr. Blank's report stating, "Highest grade completed: 6th grade"); AR 29 (1st ALJ Hearing) (indicating highest grade level achieved was 8th grade). According to Mr. P, this evidence of a new impairment, BIF, constitutes a "changed circumstance" that rebuts the presumption of continuing nondisability. *See* Pl. Mot. at 9.

The Commissioner argues that Mr. P's evidence—Dr. Blank's report and Mr. P's school records—do not satisfy Mr. P's burden to rebut the presumption of continuing nondisability. *See* Def. Mot. at 4. First, the Commissioner disputes whether Dr. Blank's diagnosis is a diagnosis. *See* Def. Mot. at 6. The Commissioner argues that Dr. Blank's report constitutes nothing more than a "*potential* diagnosis of borderline intellectual functioning." Def. Mot. at 8 (emphasis added).

However, Dr. Blank's report stated, "these results suggest likely borderline intellectual functioning." *See* AR 454. Under a section of his report titled "Diagnostic Impressions," Dr.

---

[10] Specifically, Dr. Blank conducted the Folstein Mini Mental State Exam, Weschler Adult Intelligence Scale (WAIS-IV), Weschler Memory Scale (WMS-IV), and Trailmaking A&B.

[11] The WAIS-IV test was used to determine Mr. P's IQ score.

8

1    Blank cited "DSM-5 diagnosis" and directly under that is typed "V62.89 Borderline Intellectual

2    Functioning."[12] *See* AR 455. V62.89 is the DSM-5 code for BIF. *See id.* Thus, based on the text

3    of his report alone, it appears Dr. Blank did diagnose Mr. P with BIF. Notably, Ninth Circuit

4    caselaw uses the phrase "diagnostic impression" and "diagnosis" interchangeably. *See, e.g.*, *Blau*

5    *v. Astrue*, 263 F. App'x 635, 637–38 (9th Cir. 2008) (unpublished) (referring to doctor listing

6    fibromyalgia under section titled "diagnostic impressions" as a diagnosis); *Perez v. Comm'r of*

7    *Soc. Sec.*, No. 17-CV-03947-RMI, 2018 WL 4468618, at *2 (N.D. Cal. Sept. 18, 2018)

8    (unpublished) ("Dr. Nicholson's *diagnostic impression* was that Plaintiff suffered from stuttering,

9    anxiety disorder, and major depressive disorder, assessing a GAF score of 50. Dr. Nicholson based

10   these *diagnoses . . .*") (emphasis added). Thus, Dr. Blank did in fact render a diagnosis.

11        The Commissioner next points out that even if Dr. Blank's report is a diagnosis, it does not

12   establish severity. *See* Def. Mot. at 6. Here, the Commissioner's argument is premature. Whether

13   or not the BIF diagnosis is considered severe, a new impairment can rebut the presumption of

14   continuing nondisability. *See Vasquez v. Astrue*, 572 F.3d 586, 598 n.9 (9th Cir. 2009) (stating

15   that an applicant need not establish a new, *severe* impairment to rebut the presumption of

16   continuing nondisability) ("[A]ll an applicant has to do to preclude the application of res judicata

17   is raise a new issue in the later proceeding.") (emphasis added). Thus, the issue of severity is not

18   relevant to the issue of whether ALJ Hannon was correct in applying res judicata to Mr. P's BIF,

19   because BIF is asserted as a new impairment. *See Lester v. Chater*, 81 F.3d 821, 827–28 (9th Cir.

20   1995), *as amended* (Apr. 9, 1996) (stating that "an increase in the severity of the claimant's

21   impairment would preclude the application of res judicata," however the claimant can preclude res

22   judicata by other means such as alleging "the existence of an impairment not considered in the

23   previous application."). The severity of Mr. P's BIF would be dealt with under Step Two of the

24   five-step sequential evaluation process on the merits. *See* 20 C.F.R. § 404.1520(c). In any event,

25   it is noteworthy that Dr. Blank did find Mr. P had moderate to severe impairment in the following

26

27   ---
     [12] DSM-5 refers to the "Diagnostic and Statistical Manual of Mental Disorders." *Diagnostic and*
28   *Statistical Manual of Mental Disorders* (5th ed. 2013). It is "a classification of mental disorders
     with associated criteria designed to facilitate more reliable diagnoses of these disorders." *Id.*

United States District Court
Northern District of California

1  areas: ability to maintain adequate attention/concentration; ability to adapt to changes in job
2  routine; ability to withstand the stress of a routine workday; ability to interact appropriately with
3  co-workers, supervisors, and the public on a regular basis; ability to adapt to changes, hazards, or
4  stressors in workplace setting. *See* AR 455. That Mr. P had an "extremely low" IQ of 55 strongly
5  suggests a severe impairment. *See id.*

6  Next, the Commissioner argues ALJ Hannon need not address or explicitly dismiss Dr.
7  Blank's report and Mr. P's school records because they do not demonstrate that BIF was affecting
8  Mr. P during the relevant time period of May 20, 2012 to June 30, 2012 (the period in which Mr. P
9  must show a changed circumstance). *See* Def. Mot. at 8. ALJ Hannon did, albeit in a cursory
10 fashion, address and dismiss Dr. Blank's report and Mr. P's school records. *See* AR 18–19. In his
11 decision, ALJ Hannon remarked, "while it is clear claimant has provided *new evidence* that was
12 not before the [ALJ] at the time of the prior decision, there is nothing to support a finding this
13 evidence is *material* and would warrant a finding different from the finding in the prior decision."
14 AR 19 (emphasis added). Then, ALJ Hannon cited to all of the new evidence by exhibit number
15 (over 200 pages worth), including Dr. Blank's report and Mr. P's school records. *See id.* Thus,
16 the issue is not whether the ALJ should have addressed Dr. Blank's opinion (because it is clear
17 that he did); instead the key question is whether the new evidence presented by Mr. P constituted
18 material evidence, showing a "changed circumstance," such that ALJ Hannon needed to explain
19 why, beyond a cursory dismissal, the evidence had been rejected. *See Booz v. Sec'y of Health &*
20 *Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (stating that evidence is material "only where
21 there is a reasonable possibility that the new evidence would have changed the outcome of the
22 [Commissioner's] determination had it been before him").

23 The Commissioner asserts that the evidence shows only that Mr. P suffered from BIF in
24 2018; it is inconclusive as to whether Mr. P suffered from BIF during the relevant period in 2012.
25 *See Lair-Del Rio v. Astrue*, 380 F. App'x 694, 695 (9th Cir. 2010) (unpublished) (stating that
26 retrospective letters written by doctors years after the relevant period are unpersuasive); *but see*
27 *Smith v. Bowen*, 849 F.2d 1222, 1225–26 (9th Cir. 1988) ("[M]edical evaluations made after the
28 expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration

10

condition.").

However, contrary to the Commissioner's arguments, Dr. Blank's report combined with Mr. P's school records (*see* AR 463-68) which indicate that he was enrolled in special education courses for multiple years and attained, at most, an 8th grade education (*see* AR 29, 174) tend to prove his BIF is a life-long impairment and thus would likely have affected Mr. P during the relevant period. *See Vasquez*, 572 F.3d at 598 n.9. The Social Security Administration's regulations state that BIF often manifests in childhood. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see Potts v. Colvin*, 637 F. App'x 475, 476 (9th Cir. 2016) (unpublished) (using school records and attendance in special education classes as support for mental impairment); *Hernandez v. Astrue*, 380 F. App'x 699, 700–01 (9th Cir. 2010) (unpublished) (holding that evidence, such as plaintiff skipping fourth grade, receiving poor grades, and not attending high school, evidences onset of mental impairment before age 22). Consistent with the Social Security Administration's regulations stating that BIF often onsets during childhood (*see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1), the Court finds there is sufficient evidence of an impairment to rebut the presumption of continuing nondisability.

Lastly, the Commissioner argues that Mr. P is trying to circumvent the presumption of continuing nondisability by newly alleging an impairment that purportedly existed his whole life (and which therefore should have been asserted in his first disability application). *See* Def. Mot. at 6. The Commissioner cites no authority for his argument, and it reads as an attempt to paint Mr. P's argument as not credible. *See id.* However, there is no indication in the record that Mr. P received an IQ test or tests similar to those given by Dr. Blank before 2018. It is conceivable that Mr. P first learned of his neurodevelopment disorder, BIF, in 2018 from Dr. Blank's formal diagnosis, and thus would explain why he did not allege a neurodevelopmental impairment in his first application. In any event, his failure to do so does not preclude him from raising it now.

ALJ Hannon failed to give reasons as to why he rejected evidence of Mr. P's neurodevelopmental impairment, relying solely on res judicata was in error.

        b.      <u>Rheumatoid Arthritis</u>

Mr. P also argues his Rheumatoid Arthritis ("RA") worsened during the relevant period,

11

constituting a "changed circumstance," which would also rebut the application of res judicata. *See* Pl. Mot. at 9. Mr. P believes ALJ Hannon erred by not addressing or considering a test result and a treatment note indicating an increase in Mr. P's rheumatoid factor level.[13] *See* AR 304, 412; Pl. Mot. at 9. As with the BIF evidence, ALJ Hannon *did* address the tests results and treatment note, albeit not explicitly, when he cited both documents after stating, "while it is clear claimant has provided *new evidence* that was not before the [ALJ] at the time of the prior decision, there is nothing to support a finding this evidence is *material* and would warrant a finding different from the finding in the prior decision." AR 19 (emphasis added). Thus, as in BIF context, the issue here is whether substantial evidence supports ALJ Hannon's finding that the test results and treatment note did not indicate a worsening of Mr. P's arthritic condition, and therefore did not rebut the presumption of continuing nondisability. *See* Acquiescence Ruling 97-4(9). The timeline of Mr. P's arthritic condition, date of the RF test, and date of treatment note are significant for Mr. P's argument that his RA worsened.

During the period governed by the 2012 ALJ decision (September 4, 2008, to May 18, 2012), Mr. P saw Dr. Gable for a consultative examination. *See* AR 268. Mr. P complained of joint swelling in his hands, but Dr. Gable found "no evidence of any significant arthritic disease on examination." *See* AR 269. The first ALJ gave significant weight to Dr. Gable in finding Mr. P nondisabled. *See* AR 270. On May 5, 2012 (still within the period governed by the 2012 ALJ decision), Mr. P received test results that indicated a high RF level.[14] *See* AR 412. On May 14, 2012 (again, still within the period governed by the 2012 ALJ decision), Mr. P saw Dr. Alexander Doan and received a treatment note prescribing prednisone to treat the flare of his RF level. *See* AR 304. Neither Mr. P's tests results nor the treatment note were presented to the first ALJ. *See* AR 273–77. On May 18, 2012 (less than two weeks after Mr. P received the RF test results and just four days after Dr. Doan prescribed prednisone to treat Mr. P's RF flare), the first ALJ found

---

[13] Rheumatoid factors, or "RF," are proteins produced by the immune system that, when present at high levels, can indicate rheumatoid arthritis. Def. Mot. at 4.

[14] Mr. P's RF level measured at 390 IU/ML; well above the normal range of <14 IU/ML. *See* AR 412.

Mr. P nondisabled. *See* AR 272. Instead of appealing the ALJ's decision, Mr. P filed a subsequent disability application for the period of time spanning May 20, 2012 (the alleged onset date) through June 30, 2012 (his last date insured). *See* AR 172–90. Unfortunately, Mr. P presented no medical evidence showing a worsening arthritic condition from his first disability period (September 4, 2008, to May 18, 2012) to his second disability period (May 20, 2012 to June 30, 2012).[15]

After receiving the test results and treatment note from Dr. Doan (dated just before the first ALJ issued her opinion), the correct remedy for Mr. P would have been to appeal the 2012 ALJ Decision to the Appeals Council, citing new evidence, since the test results and Dr. Doan's treatment note fell within that period. *See* 20 C.F.R. § 404.970 ("The Appeals Council will review a case if . . . [it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the hearing decision."). However, Mr. P did not appeal that decision. Thus, pursuant to the ALJ's decision issued on May 18, 2012, Mr. P was considered nondisabled as of the issuance of the ALJ's decision, despite the fact that he had received his test results and treatment note from Dr. Doan on May 5 and May 14, 2012, which might have supported a contrary finding. *See* AR 272 ("[Mr. P] has not been under a disability . . . from September 4, 2008 through the date of this decision, [May 18, 2012]."). If anything, this evidence makes it more difficult to claim *changed* circumstances between the first ALJ decision and the new period of alleged disability.

There is some support for suggesting the earlier test is probative of disability during the currently claimed period despite the fact that the test fell within the period governed by the first ALJ decision. However, even if medical evidence during the first period could be considered in assessing whether there were changed conditions (*see Rizo v. Colvin*, No. 3:12-CV-04520 RS,

---

[15] Later, in October 2012, just a few months after his last date insured, Dr. Anderson (a new doctor) diagnosed Mr. P with RA and recommended that he see a specialist. See AR 297. In January 2013, the rheumatoid specialist noted that prednisone treatments for Mr. P were unsuccessful and diagnosed him with inflammatory polyarthritis and "likely seropositive arthritis." *See* AR 441–45.

2013 WL 4029199, at *1–3 (N.D. Cal. Aug. 6, 2013)), there is no indication during the relevant period whether Plaintiff's RF levels increased, decreased, or remained the same thereafter, or whether prednisone was effective in treating his symptoms. Although there was an increase in Mr. P's RF levels, there is no indication that the increase demonstrates a worsening of his RA when compared to the joint swelling and pain that he complained of in his first ALJ decision. *See* AR 36–43. Additionally, it is plausible that the prednisone prescribed by Dr. Doan initially helped to improve Mr. P's RA during his second disability period. *See Burch*, 400 F.3d at 680–81 (stating that if the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision). Thus, as to RA, Mr. P did not rebut the presumption of continuing nondisability.

### 2. Improper Rejection of Medical Opinion

The first ALJ found that Mr. P suffered from severe panic disorder with agoraphobia because Mr. P's agoraphobia was more than a "slight abnormality" and had more than a "minimal effect" on his "ability to [do] basic physical or mental work activities." *See* AR 265. However, because she concluded there were still jobs that Mr. P could hold, she did not find him disabled as a result of his agoraphobia (or any of his alleged conditions). *See* AR 271. Applying res judicata, ALJ Hannon did not disrupt the first ALJ's findings. *See* AR 17–19.

Plaintiff contends the ALJ erred in rejecting the opinion of his treating physician regarding agoraphobia. A treating doctor's opinion that is uncontradicted can only be rejected by an ALJ for clear and convincing reasons. *See Lester*, 81 F.3d at 830. Mr. P argues ALJ Hannon improperly rejected Dr. Alexander Doan's May 31, 2018 opinion because he did not set forth "clear and convincing" reasons for doing so. *See* Pl. Mot. at 10–11. Dr. Doan's letter stated that he diagnosed with Mr. P with agoraphobia in 2011 and did not believe that Mr. P could perform any full time work. *See* AR 479. ALJ Hannon gave no weight to Dr. Doan's opinion (despite the fact that he was Mr. P's treating doctor) because Dr. Doan did not provide any limitations or identify an onset date. *See* AR 19. In addition, ALJ Hannon stated that "Dr. Doan's statement indicating the claimant is 'disabled' is not a medical opinion, but rather an administrative finding" reserved to the Commissioner. *See id.*

In response, Mr. P argues that Dr. Doan set an onset date of December 15, 2011, and

specific limitations such as "deficits in social functioning and an inability to deal with people." Pl. Mot. at 10–11. Dr. Doan stated, "[Mr. P] has minimal social interactions and has difficulty dealing with everyday life," and at another point, stated "I do believe that he cannot perform any full time work and will not be able to deal with normal daily life activities such as customer service or any situation where he has to deal with people." However, Mr. P had been found nondisabled by the first ALJ despite finding he suffered from severe agoraphobia. *See* AR 265, 272. Critically, for purposes of the instant appeal, Dr. Doan did not indicate that Mr. P's agoraphobia worsened after the period of claimed disability in the first application. *See* AR 479. Mr. P had already been diagnosed with agoraphobia in 2010 by Dr. Dahl and in February of 2011 by a doctor at Kaiser. *See* AR 269, 276. Thus, the onset date and limitations provided by Dr. Doan are irrelevant because they confirm what was already known from the first ALJ decision: Mr. P suffered from severe agoraphobia. *See* AR 265. In the absence of a changed circumstance indicating a worsening of Mr. P's agoraphobia during the relevant period, Mr. P is again subject to the presumption of continuing nondisability. *See Chavez*, 844 F.2d at 693; Acquiescence Ruling 97-4(9). Therefore, ALJ Hannon was correct in giving little weight to Dr. Doan's opinion. Even if fully credited, Dr. Doan's opinion did not establish any changed circumstance for the relevant period of May 20, 2012, to June 30, 2012.

Mr. P further asserts that ALJ Hannon should have exercised his duty to fully and fairly develop the record by re-contacting Dr. Doan to further inquire about limitations and the onset date. *See* Pl. Mot. at 11. However, an ALJ need only contact a medical expert where the record is ambiguous. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (quoting *Mayes*, 276 F.3d at 459–60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.")). Given the first ALJ decision, the record is unambiguous regarding Mr. P's diagnosis of agoraphobia before the first ALJ decision. *See* AR 263–77. Additionally, the record includes over one hundred pages of treatment notes from Dr. Doan, stretching from 2011 to 2018, but none concern the relevant period. *See* AR 304–418. As the Commissioner asserts, ALJ Hannon did not have a duty to further develop the record under these circumstances. *See Ford*, 950 F.3d at 1156; Def.

Mot. at 10.

Accordingly, substantial evidence supports ALJ Hannon's decision. *See Lingenfelter*, 504 F.3d at 1035.

### 3. Remand for Further Proceedings

Since ALJ Hannon committed reversible error by improperly applying res judicata (as to the newly asserted BIF impairment), the final issue for this Court to decide is whether to remand for further proceedings or for an immediate payment of benefits. Mr. P contends that the Court should remand for payment of benefits because the credit-as-true rule applies. *See* Pl. Mot. at 12. The credit-as-true rule states: "Before [a court] remand[s] a case to the ALJ with instructions to award benefits, three requirements must be met: '(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Contrary to Mr. P's argument, here, a remand for further proceedings is appropriate. The first requirement of the credit-as-true test is not met because further administrative proceedings are necessary to determine Mr. P's new residual functional capacity and disability status, after taking into account Mr. P's new impairment, BIF. *See* Acquiescence Ruling 97-4(9); *Grube v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04263-PHX-JZB, 2019 WL 917222, at *3 (D. Ariz. Feb. 25, 2019) (unpublished) ("If facts that constitute a changed circumstance include new or worsening symptoms, the ALJ is obligated to analyze the RFC in light of the new evidence.") ("On remand, the ALJ should consider all relevant evidence and determine whether there has been a change to the Plaintiff's RFC and whether such a change, when considered in the five-step analysis, would result in a finding of disability."). Thus, the Court remands for further proceedings and instructs the ALJ to determine Mr. P's new residual functional capacity and disability status.

## IV. CONCLUSION

Mr. P successfully rebutted the presumption of continuing nondisability during the relevant period with respect to his BIF. However, substantial evidence supported ALJ Hannon's rejection of Mr. P's claim of disability based on RA. Accordingly, the Court **GRANTS in PART** Mr. P's Motion for Summary Judgment, **DENIES in PART** the Commissioner's Cross-Motion for Summary Judgment, and **REMANDS** for further proceedings.

This order disposes of Docket Nos. 18 and 21.

**IT IS SO ORDERED**.

Dated: July 14, 2020

_____
EDWARD M. CHEN
United States District Judge