United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.P., | Case No. 19-cv-03976-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** |
| ANDREW M. SAUL, | Docket No. 26 |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff T.P. filed suit against Defendant Andrew Saul in his official capacity as the Commissioner of the Social Security Administration following denial of his application for social security disability insurance benefits. This Court remanded. The Social Security Administration reversed and granted benefits. Plaintiff filed the instant motion for an award of attorney's fees pursuant to 42 U.S.C. § 406(b). *See* Docket No. 26 ("Mot"). Defendant filed a response taking no position as to the reasonableness of the fee request. *See* Docket No. 27 ("Resp.") at 5.

For the following reasons, the Court **GRANTS** Plaintiff's motion.

## II.   BACKGROUND

The Commissioner initially denied Plaintiff's request for benefits in 2016 and again on reconsideration in January 2017. *See*, Docket No. 23 ("Summ. J. Order") at 4-5. A year later, Plaintiff appealed the Commissioner's decision to an Administrative Law Judge (ALJ) who also denied his benefits petition. *Id.* at 4. The Appeals Council for the Social Security Administration upheld the ALJ's decision in May 2019. *Id.*

Plaintiff appealed the Council's decision by filing the instant action in July 2019. *Id.* at 5.

1    To pursue his rights in this Court, Plaintiff retained Mr. Harvey Sackett as his counsel, agreeing to

2    pay him "a fee no greater than 25% of the past-due benefits owed" if he was able to secure a

3    positive result following judicial proceedings.  *See* Mot., Ex. C.  On July 14, 2020, this Court

4    reversed the agency's benefits denial and remanded the case for further proceedings.  This Court

5    then granted Plaintiff $4,175.91 in fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. §

6    2412(d).  *See* Docket No. 23 (Order Granting Award Stipulation) at 2.

7           On remand, ALJ Ruxana Meyer found in favor of Plaintiff, concluding that he was both

8    disabled and entitled to a period of disability insurance benefits.  *See* Mot., Ex. A.  As a result,

9    Plaintiff was awarded a gross total of $86,987.50[1] in past-due benefits, of which 25% (or

10   $21,747.00[2]) was withheld by the Social Security Administration for the purpose of paying Mr.

11   Sackett's attorney's fees.  *See*, Mot., at Ex. B.  Mr. Sackett then filed the present motion,

12   requesting $17,571.09 be paid to him in attorney's fees, representing the $21,747.00 withheld

13   pursuant to 42 U.S.C. § 406(b), minus the $4,175.91 previously awarded pursuant to the EAJA.

14   *Id.*  Mr. Sackett states that he spent 19.9 hours in legal services and itemized this figure in the

15   present motion, resulting in a *de facto* hourly rate of $1,091.81.[3]  *Id.* at 11.

16          Defendant filed a response to Plaintiff's motion, noting the proper analysis for determining

17   the reasonableness of a fee award but without taking a position in this case.  *See* Resp. at 5.

18                              **III.    DISCUSSION**

19   A.    Legal Standard

20          Under § 406(b), a court that "renders a judgment favorable to a claimant . . . may

21

22   _____

     [1] This amount was calculated retroactively by adding the withheld amount with the received
23   amount.

24   [2] The Reply notes that this number is "inconsistent with Counsel's calculation," however, it would
     appear that this inconsistency results from the Social Security Administration rounding up when
25   calculating the amount to be withheld for paying attorney's fees.  *See* Resp. at 2.  Thus, the correct
     calculation of 25% of past-due benefits would result in $21,746.875, a mere $0.125 less than the
26   amount currently at issue.

27   [3] This *de facto* hourly fee is calculated by dividing the amount withheld by the number of hours
     spent where the numerator does not account for the EAJA award to be returned to the Plaintiff.
28   *See*, Young v. Berryhill, No. 18-cv-01721-DMR, 2021 U.S. Dist. LEXIS 111302, *4-5 n.1 (N.D.
     Cal. Jun. 14, 2021)

United States District Court
Northern District of California

determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment."  If an attorney is awarded fees under both the EAJA and § 406(b), "the claimant's attorney must 'refund to the claimant the amount of the smaller fee.'"  *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) (quoting Act of Aug. 5, 1985, Pub. L. 99-80, § 3, 99 Stat. 186).  In other words, "an award of fees under section 406(b) must be offset by any award of fees under EAJA." *Young*, 2021 U.S. Dist. LEXIS 111302, *3–4.  Mr. Sackett is therefore expected to issue a $4,715.91 refund to Plaintiff and only keep whatever portion of the $17,571.09 the Court decides to award him under § 406(b).  However, in determining the reasonableness of a fee award under § 406(b), a court must view "the requested fee award under section 406(b) without first deducting the EAJA fee award that will be refunded to Plaintiff." *Young*, 2021 U.S. Dist. LEXIS at *4-5 n.1.

The Supreme Court in *Gisbrecht* laid out the test for determining whether fees are reasonable under § 406(b). 535 U.S. at 808.  The Court acknowledged that the circuits were split as to the reasonableness determination under § 406(b). *Id.* at 799.  Some courts "decline[d] to give effect to [an] attorney-client fee agreement," instead employing a "lodestar" method to determine reasonable fees. *Id.* at 797.  Under the lodestar method, courts would first determine what a reasonable hourly rate should be (without looking to the attorney-client agreement) and then adjust the contingency-fee to reflect this amount. *Id.* at 800–01.  Other courts presumed "the contingent-fee agreement between claimant and counsel, if not in excess of 25 percent of past-due benefits" to be reasonable. *Id.* at 792.  The *Gisbrecht* Court rejected the lodestar method and determined that courts must "look[] first to the contingent-fee agreement, then test[] it for reasonableness." *Id.* at 808.  Put differently, courts must determine if a fee resulting from an agreement is unreasonable and "thus subject to reduction by the court." *Crawford v. Astrue*, 586 F.3d 1142, 1148 (9th Cir. 2009).

In *Crawford*, the Ninth Circuit clearly laid out the factors courts should consider in determining whether a contingency-fee agreement is "reasonable" under *Gisbrecht*. *Id.*  In doing so, the *Crawford* court held that a fee resulting from a contingency-fee agreement is unreasonable "if [1] the attorney provided substandard representation or [2] engaged in dilatory conduct in order

1   to increase the accrued amount of past-due benefits, or [3] if the benefits are large in comparison

2   to the amount of time spent on the case." *Id.* (citing *Gisbrecht*, 535 U.S. at 808). If necessary to

3   assess these factors, "the court may require counsel to provide a record of the hours worked and

4   counsel's regular hourly billing charge for noncontingent cases." *Crawford*, 586 F.3d at 1148;

5   *Gisbrecht*, 535 U.S. at 808.

6         Lastly, fees under § 406(b) are "paid out of a successful claimant's past-due benefits" and

7   because the Commissioner "has no direct financial stake" in the fee award, it "plays a part in the

8   fee determination resembling that of a trustee for the claimants." *Ciletti v. Berryhill*, No. 17-cv-

9   05646-EMC, 2019 U.S. Dist. LEXIS 4993, *3 (N.D. Cal. Jan. 9, 2019); *Gisbrecht*, 535 U.S. at

10  808. As such, "§ 406(b) calls for court review of such arrangements as an *independent check* to

11  assure that they yield reasonable results in particular cases." *Gisbrecht*, 535 U.S. at 807 (emphasis

12  added).

13  B.   Analysis

14        The Court must begin with the contingent-fee agreement. *See Gisbrecht*, 535 U.S. at 808.

15  Here, the agreement provides that Mr. Sackett will receive "a fee no greater than 25% of the past-

16  due benefits owed to [the claimant]." *See* Mot. at Ex. C. Because the agreement plan and Mr.

17  Sackett's request are within the maximum allowed by § 406(b), the reasonableness question turns

18  on whether the 25% of past-due benefits is reasonable when considering the other *Crawford*

19  factors. *See*, *Crawford*, 586 F.3d at 1148-49. This memorandum will therefore address each of

20  the *Crawford* factors in turn.

21        First, there is no indication from the record that Mr. Sackett provided "substandard

22  representation." *Gisbrecht*, 535 U.S. at 808. To the contrary, Mr. Sackett successfully appealed

23  the agency's denial of benefits before this Court. *See* Summ. J. Order at 1-5. The first *Crawford*

24  factor favors upholding the requested fee amount because Mr. Sackett adequately represented

25  Plaintiff.

26        Second, it appears that Mr. Sackett did not delay the adjudication of Plaintiff's case in

27  order to "profit from the accumulation of benefits during the pendency of the case in court."

28  *Gisbrecht*, 535 U.S. at 808. Mr. Sackett acknowledges, as the docket reflects, that Plaintiff

United States District Court
Northern District of California

4

1    requested two extensions to file his motion for summary judgment.  *See*, Docket No. 14; Docket

2    No. 16; Mot. at 4.  Mr. Sackett requested both extensions because he had multiple "administrative

3    hearings and district court briefs due" at the time the motions before this Court were due.  *See*,

4    Docket Nos. 14, 16.  These extensions only added two months to the overall time it took to

5    adjudicate this action.  *Id.*  Because the delay was minimal, there is no evidence of bad faith in

6    seeking the extensions, and Defendant does not contest that Mr. Sackett was not diligent, the

7    second *Crawford* factor also favors upholding the requested fee amount.

8        Finally, the Court may question the requested fee amount "if the benefits are large in

9    comparison to the amount of time counsel spent on the case."  *Gisbrecht*, 535 at 808.  Presently,

10   Mr. Sackett is asking this Court to award $21,747.00 for 19.9 hours of work, for a total *de facto*

11   hourly rate of $1,092.81.00 (before subtracting the EAJA value).  *See* Mot. at 1, 11.  This is a very

12   large hourly rate, especially compared to Mr. Sackett's typical hourly rate of $435.00.  *See* Mot. at

13   9 (using the median average rate for all San Francisco attorneys as an equivalent for Mr. Sackett's

14   own hourly rate).  In addressing the significant difference between Mr. Sackett's typical non-

15   contingent hourly rate and the hourly rate resulting from the contingency-based award, the Court

16   may use "the lodestar calculation, *but only as an aid* in assessing the reasonableness of the fee."

17   *Crawford*, 586 F.3d at 1151 (emphasis in the original).  This is because courts generally accept

18   that "the resulting *de facto* hourly rates may exceed those for non-contingency-fee arrangements"

19   in the § 406(b) context.  *Hearn v. Barnhart*, 262 F. Supp. 2d. 1033, 1037 (N.D. Cal. 2003).

20       This Court has previously questioned Mr. Sackett's exorbitantly large hourly rates in

21   contingency fee cases.  In *Goucher v. Colvin*, for example, Mr. Sackett requested 25% of past-due

22   benefits pursuant to a contingency fee agreement that resulted in a *de facto* hourly rate of $814.00.

23   No. 14-cv-03009-EMC, 2017 U.S. Dist. LEXIS 126554, *7 (N.D. Cal. Aug. 9, 2017).  This Court

24   noted that the hourly rate was high, "particularly in a Social Security case," and that Mr. Sackett

25   had not met his burden of showing that it was reasonable to receive such a large award.  *Id.*  This

26   Court was particularly troubled by (1) the fact that Mr. Sackett's noncontingent hourly rate was

27   $300 to $400 and (2) he "[had] never actually been awarded a *de facto* hourly rate in the $814

28   neighborhood."  *Id.* at *7–10.  Indeed, "the past-due benefits (over $100,000) [were] large

United States District Court
Northern District of California

compared to the amount of time Sackett spent on the case (about 31 hours)." *Id.* at \*7.  Thus, the Court reduced Mr. Sackett's attorney's fee award to a gross of $18,540.00, which resulted in a *de facto* hourly rate of $600.00.  *Id.* at \*10–11.

Here, Mr. Sackett similarly fails to provide an estimate of his present-day non-contingent hourly rate, instead providing data from the Consumer Survey Report to indicate that the average median rate for all attorneys in San Francisco is $435.00 per hour.  Mot. at 9.  He argues that both his experience in social security disability law and record of success warrant a noncontingent rate within "the 95% Median Attorney Rate ($688.00)."  *Id.* at 10.  He also contends that the low chance of success in social security appeals of benefit denials—which he estimates is at 24.25%—means that the Court should apply a 4.08 multiplier.  *See Id.* at 5.  Lastly, Mr. Sackett cites to numerous contingency fee cases where courts have awarded him similar fee amounts.  *See*, *Ainsworth v. Berryhill*, No. 5:16-cv-03933-BLF, 2020 U.S. Dist. LEXIS 194416, \*6-8 (N.D. Cal. Oct. 20, 2020) (granting an effective hourly rate of $1,325.34 for 22.3 hours worked resulting in approximately 23.03% of the past-due benefits); *Dreesman v. Colvin*, No. 16-cv-02549-HRL, 2019 U.S. Dist. LEXIS 167278, \*5-6 (N.D. Cal.  Sept. 27, 2019) (granting an effective hourly rate of $1,034.86 for 22.65 hours worked, resulting in a total of 14.9% of the past-due benefits); *Perl v. Comm'r of SSA*, No. 1:16-cv-00196-SAB, 2018 U.S. Dist. LEXIS 143807, \*5-6 (E.D. Cal. Aug. 23, 2018) (granting an effective hourly rate of $1,075.23 for 31.6 hours worked, resulting in the complete 25% of past-due benefits); *Heath v. Berryhill*, No. 3-cv-01811-EDL, 2017 U.S. Dist. LEXIS 221883, \*6-7 (N.D. Cal. Aug. 28, 2017) (granting an effective hourly rate of $1,437.80 for 32.35 hours worked, resulting in a total of just below 25% of past-benefits due).

As shown above, Mr. Sackett has successfully addressed the issues that lead to this Court's prior skepticism in *Goucher* in this Court's sister courts and at present.  First, Mr. Sackett has demonstrated that he has been able to obtain a de facto fee award of about $1,000.00 in at least four cases since *Goucher*, including in a case adjudicated last year.  *See*, *Ainsworth*, 2020 U.S. Dist. LEXIS, at \*6-8; *Dreesman*, 2019 U.S. Dist. LEXIS, at \*5-6; *Perl*, 2018 U.S. Dist. LEXIS, at \*5-6; *Heath*, 2017 U.S. Dist. LEXIS, at \*6.  Similarly, Mr. Sackett provides statistical data from the Social Security Advisory Board indicating the significant risk of loss in these social security

benefit denial cases.  *See* Mot., Ex. E.  Also, other courts in this district have approved similar amounts in the § 406(b) context as recently as June of 2021.  *See*, *Young*, 2021 U.S. Dist. LEXIS at *3.  The third *Crawford* factor therefore also favors an award to Mr. Sackett of the contingent-fee award he requests.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for an award of attorney's fees under section 406(b), without diminishing the requested fee amount.

This order disposes of Docket No. 26.


**IT IS SO ORDERED**.


Dated: July 22, 2021

_____
EDWARD M. CHEN
United States District Judge